The rule is said to be retroactive if it upsets settled expectations on which a party relied on. Well, if she locked in, in effect, to her settled expectation what it was when she filed her claim. Well, her subjective expectation no doubt would have changed, or any party's subjective expectation no doubt would have changed as time went along. The point, I think, to be made is that no expectation would have been settled at any point in this process, up to and including the time at which the actual benefits decision is made, in fact, in the request for benefits. The law of benefits of all kinds is subject to change, and what a series of cases that we've cited, for instance the Combs case, the Amok case from the 6th Circuit, and some of the cases cited in that decision, stand for the idea that by filing an application or a claim, an applicant doesn't sort of freeze and amber the expectations, whatever they were, that would have existed at that time. That actually, as I emphasize, is not really even so germane, specifically that Ms. Rodriguez and Ms. Vincent, because at the time they filed their claims, there wasn't even a case law. But even had the case law existed at that time, another claimant would have had no settled expectation or right. Are you saying that basically, whatever her expectation was at various stages in the proceeding, it's not the kind of an interest that cannot be retroactively altered? Is that basically what you're saying? It isn't as though I, when I commit a crime, I knew the maximum sentence was 10 years, and afterwards they raised the penalty to 15 years, which you can't do. But here it was sort of a shifting thing. First she hoped, first she filed and she knew she couldn't get it. Then there was some intervening decision, she thought maybe she could get it. Then there was another decision by the secretary which says, no, you can't get it, and that that's not enough to say that this is impermissible retroactivity. I think, yes, I certainly agree with all that. I think to go a little bit further, I think our position is it's truly not retroactivity at all because it's an existing rule that is applied certainly in this instance and in some of the previous cases, as the law was when the claim was filed, as it happens, is what the law was when the claim was decided. But even so, we have to look at it objectively, not as to any claimant's particular subjective expectations, and there couldn't have been an objective expectation of stability at any point in the process. Now that test, of course, is, it has been sort of formulated into the specific sort of three prongs that are discussed in line graphing, and Princess Cruz's in particular. And those prongs, if you will, follow what we've said about retroactivity in that it upsets settled expectations on which a party relied in completed conduct in the past. So we look at, with respect to upsetting settled expectations, it's the nature and the degree of the change that's created by the rule. And then the connection to past events has to do with the reliance in past conduct, and the reasonable nervous kind of fair warning issues also relate to the reliance in past conduct. Now those cases in which retroactivity has been found, impermissible retroactivity has been found, are cases in which a claimant such as, well, a party such as Princess Cruz's for instance, took actions that are in a sense irrevocable or irreversible in the past in reliance on a specific legal regime that now has been changed, and there's a clear appearance of unfairness. Princess Cruz, of course, didn't collect certain information from its passengers or about its passengers, and so it couldn't comply with this new rule. And so there was in a sense a sort of bait and switch, and there was no opportunity for the parties. And your point is, I tell you, there's nothing she could have done that could have possibly changed her position. She was stuck with whatever they were going to do, unlike the situation where someone might say, well, if I'd have known that now, I'd have filed earlier. Right. And given the context here, dependency and indemnity compensation, which is of course a sort of grave matter, we don't want to be disrespectful to the claimant at all or certainly to the family. There certainly isn't any reason to believe that any of these factors, whether the deceased veteran had been rated with 100% disability for 10 years preceding his or her death, whether that could have been changed. It would have been changed in some way in reliance on some legal regime. The timing or the filing of the claim itself, there's no reason to expect that the legal regime necessarily impacted that. But your position is that there's no basis for considering what I would call the equities unless it's totally black and white. That is, unless there was an explicit change of position rather than the position which existed. Well, the Landgraf and Princess Cruz's test has been expressed as a sort of balancing test, but it's also... That was my question. I gather that you were saying, no, you can't balance in this case because certainly if you do, there are equities on her side. Well, the court didn't endorse this, but we certainly agree with the position that's sort of suggested in Princess Cruz's that other circuits have indeed adopted that this reasonable reliance of fair warning of notice issues under the third prong are in effect what the court called tiebreakers in cases that appear to be quite close. Here, we would suggest where the other factors, the nature of the alleged change in the law, where the law itself was ambiguous in some of the flux, and the lack of any relationship to any completed transaction or any reliance by a claimant in the past should be decisive, and the equities... Obviously, it's unfortunate when anyone who is a survivor... That was my question. Your position is the equities are not to be considered. That's right. I'm afraid that's the case given, yes, given what the statute, the requirements that the statute sets forth, ambiguous as they may have been for providing compensation, and the fact that the agency's interpretation, which would preclude the theory that Ms. Vincent and Mr. Armegis want to pursue here, has been sustained, that appears to be the end of absent other factors that would suggest retroactivity. Since I have some time, I would just like to underscore there really isn't any basis to conclude or even really allege that Ms. Vincent, in particular, was misled by the VA in any way. She doesn't argue she was misled. She argued that she complied with the laws it was at the time. Yes, she does argue that, but there is suggestion in the red brief that VA made some statements while her claim was pending suggesting that she may be able to take advantage of the hypothetical in the time of the theory, and that somehow contributes to some reliance on her part. We don't think, of course, the statements made during the administrative process are the types of communications or create the kind of reliance that's relevant here to retroactivity, but we do want to be clear, since I do have time to respond, that Ms. Vincent's case was among those that were stayed during the review of the rulemaking in 2000, specifically because the outcome of the claim was understood to be controlled by whether the hypothetical in the time of the theory was available to her. That is why the claim was stayed, and that's what VA argued. In our belief, that's what VA stated to her in its communications. That was why the claim was stayed. It wouldn't have been stayed if there were not any possibility that the revised rule would apply to the claim. It wouldn't have been stayed. It wouldn't have been decided. So there's really no misleading statements at all in VA. Unless there are questions, I reserve the remainder. Thank you. Okay. Thank you, Mr. President. Ms. Barber. May it please the Court. The Secretary has made several statements that are incorrect in this case. One statement, of course, is that there's no unfair surprise here, no upsetting of settled expectations. We have a kind of a problem. She doesn't even apply for a hypothetical claim until eight months after the rule changes, right? But nevertheless, the first adjudication of her claim occurred in June of 1997, after the Green case came out, which interpreted the law to mean that there was an avenue of entitlement, hypothetical entitlement. But how would anybody have perceived that she was even seeking that avenue when she didn't file for it until after it was no longer available? Well, I would say that her expectation at the time of filing is not necessarily in this case, given all that we're going to talk about that happened afterward, is decisive in this case because she was led to believe via specific VA adjudications during the claims process that she was entitled under this hypothetical method. So our position is that there was an upsetting of settled expectations here. Specifically, she was told in May of 2002, in a VA adjudication, that because she had filed prior to the date of the change, that she would still be considered under the hypothetical entitlement. And indeed, they did adjudicate the claim then. That was a denial of benefits under hypothetical entitlement. And she appealed to the board, fully expecting that her claim was going to be whether she was entitled under the hypothetical avenue. There, without any notice at all, the board completely changed the position of the VA and said that she never had an avenue. She doesn't have an avenue of entitlement under the hypothetical theory. But the board, the thing that she was told, was it the regional office? Yes, that's in the record. Well, don't bother with that. She was told that the regional office, but the board is the superior of the regional office, isn't it? In other words, the regional office told her that. Well, we start with the fact that when she originally applied, she had no reason to believe she would prevail on this. Isn't that right? When she filed her first claim. And then, subsequently, as the thing went along, when it came before the regional office and they said, you're OK. And then it went up to the board and the board said, no, you're not OK. And the board, it seems to me, is the one that has a controlling voice on this rather than the regional office. Well, I'm trying to prove the element of unfair surprise and upsetting subtle expectations here by referring to a VA decision in the appendix at page 216 that says, however, since you filed your claim prior to the 1-0-0 date, entitlement to a hypothetical rating for DIC  So that, of course, led her to believe, and several VA documents prior to that time had led her to believe that she did have the hypothetical avenue open to her. But I also want to, and in this case, actually, it's kind of similar to Princess Cruz's case where the cruise line had received a letter called the Frigg letter saying that they wouldn't have to pay this tax. And although the court in that case said that wasn't a decisive document, it was just a letter from the customs official, still they considered it very important in terms of the upsetting of subtle expectations that the cruise line had actually received this letter saying, no, you won't have to pay this tax. And later they applied the law to her. Now, in this case, our case is even more persuasive on that element because this was a VA decision. This was a decision document on page 216 that told her that she could use the hypothetical avenue to get entitlement to DIC. So it's even more persuasive. And there's nothing she could have done as a result of this that would have changed the result, is there? This isn't a case where someone delayed filing and said, had I known I would have filed, or she failed to state a claim at the time because she didn't think she had. There's nothing she could have done once she had filed her claim that would be affected by the ruling on this point. I'm not sure I agree with that. I'm not sure I follow it all the way. Oh, well, let me try making, see if I can make it a little clearer to you. In many situations, one of the factors that's taken into account in determining retroactivity is whether if the person involved had known what was going to be done, they would have altered their course of conduct. Whereas here, once she filed her claim, there's nothing she could have done in the way of altering her conduct had she known what the end result was going to be. Well, in fact, she did alter her conduct. And we would also dispute the Secretary's statement that there's no relevant past event here that's connected to the change in law. In fact, the- How did she alter her conduct? What did she do that she would not have done, or what had she not done that she would have done had she known at the time she did it that later on they were going to change the rule? Well, if you're looking for particular conduct by Mrs. Vincent, there's evidence throughout the record that she went ahead and tried to develop evidence pertinent to the hypothetical entitlement avenue. In the Joint Appendix at page 107, you have a letter that she submitted that goes to the hypothetical entitlement avenue saying essentially that the veteran had filed for total disability rating in 77, many years before he died. He was denied at that time, and then he did not approach the VA again until 93. What could she have done that might have avoided what happened? And there's nothing she could have done that would have prevented her from being ultimately told that you're not going to get these benefits, is there? Is your question going to the relevant past event? In my criminal hypothetical, theoretically the defendant would say, well, I would have been willing to run the risk of 10 years imprisonment, but I wouldn't have held up the bank had I known that I would be sent to jail for 15 years. There's nothing in that sense that she could have done. I gather when you said what she did, all she did was try to present evidence supporting her theory of the case. Yes, and that goes to both the requirement of a past event and also an element of reliance. She acted in reliance on her belief that VA allowed her to prove entitlement under the hypothetical avenue. But I don't see you arguing that because this is a veteran and veterans benefits that the ordinary routine rules of retroactivity should be changed or should not apply. We have not made that specific allegation because we believe that this factual scenario here fits the Princess Cruz's factors. She has proved everything. A change in the law, green was the law, interpreting that she had this avenue of entitlement, and that the group of people who were entitled to DIC was, let's say, this large, and then the change in regulation came about and constricted that circle of people who were entitled to DIC, so that this was a substantial change in law. It actually changed the requirements for entitlement to DIC. So that's one element, the nature and extent of the change in law. The second element, relevant past conduct, is that the VA adjudicated her decision in June of 97, and it also went before the board, while the green case and subsequent cases were in effect. And those cases entitled her to adjudication under the hypothetical avenue. So she has relevant past conduct. She relied, she tried to develop evidence that would be relevant to entitlement in the hypothetical avenue. And she went out and got medical opinions, she disputed VA's statements that they could not find records in this case that would establish her entitlement. Here the veteran was treated for 50 years solely at VA facilities, and they only went out once to get those records from the VA. What would she have done differently had she known at that time that the secretary was going to change the rule? The only thing she would have done differently, I take it, is not submit some of the material she submitted. Is that right? She acted in reliance on her belief that this avenue was relevant. I understand that, but I'm asking you, suppose she had not had that belief, what would she have done differently? And the only thing that she would have done differently, I take it, is she wouldn't have submitted this evidence because it wouldn't be relevant. Well, again, several cases appear to us to support the view that if there was an adjudication while the prior rule was in effect, an actual decision by the agency while the more liberal rule was in effect, that that would be a relevant past conduct. In the Goodyear case decided by this court in 97, Goodyear didn't have a vested right to receive consideration for the refund because they were simply an applicant whose claim had not been approved. And in this case, Mrs. Vinson's case went through the adjudication process before the new rule came into effect in 00. Twice it went through, in June of 97, and again at the board before the rule changed. So in this case, she is not just an applicant who has filed a claim. She is someone who had an entitlement in June of 97 to be considered under the hypothetical avenue, and again, her case was before the board before the rule changed. So we can differentiate her from cases that are looking for saying, oh, you're just an applicant and the rule changed while your claim was in the process. Here, she's an applicant whose case was adjudicated, specific decisions, while the more liberal rule, if I may call it that, was in effect. So she is not just an applicant out there. She does have actions to hang her hat on to meet the relevant past conduct. She tried to develop evidence. If I may just suggest, it was adjudicated, but not finally adjudicated. Well, you're right. It was adjudicated, but not finally adjudicated. But she was also told, as you said. And the question is whether they could change the rule during the course of the final adjudication. Well, that would certainly upset her settled expectations, given the VA decision, an actual decision in her case in 02 that because she had filed prior to the rule, she had a right to be considered under the hypothetical avenue of entitlement. They specifically told her that. And the fact that they themselves went back and forth in several ways in their interpretation of the law while her case was under consideration does not change the fact that the Green case was binding law while her claim was being decided, and she had a right to have it applied. Not only that, she was told that they would apply it. And also, she acted in reliance, trying to develop some evidence that would support her entitlement here, although we know that in these situations, new evidence, it's still under dispute. You have the Nova case before you right now again for the third time. It's still under dispute whether you can add new evidence. The fact remains that she did act in reliance on her belief that she had this avenue open to her. And again, the third problem, it was the nature and extent of the change in law. This was a vast change in law. It narrowed the number of claimants who would be entitled to DIC. The change in law did that. Under the Green case, as I said, there were a larger number of claimants who were entitled. She would be shut out under the rule change. And so basically, this changed the substantive criteria for entitlement to DIC, a vast change. So she clearly meets all three of the requirements for retroactivity here. And again, there are many cases, since this seems to be a point of dispute here, there are many cases where you don't get a decision on your case while the more liberal role is in effect, then there's no retroactive effect. She can be distinguished from those cases. And many cases like Goodyear, the new Combs case, the prime country medical associates, all of them said, oh, you're just an applicant, and so there's no retroactive effect. But in her case, she did have a decision. She was not just an applicant at that time. She actually got two VA decisions while the more liberal role was in effect. Thank you, Ms. Bradley. Mr. Chadwick, let me ask you a hypothetical. Suppose she had first filed her claim after Green had been decided. Would the result be different? No. No, it shouldn't be different. Because you would still have to look at the nature and extent of the change in the outcome, if you will, or the applicable law that would occur during the pendency of the claim. And that still remains the interpretation by the secretary, who is a competent interpreter, of this ambiguous statute, and specifically these five ambiguous words, or was entitled to receive. That is not a momentous change, certainly given that the VA had already announced an interpretation in 1990, well before Green and his claim was filed, which essentially now this court has, upon reviewing the rule, has upheld as essentially reasonable with limited exceptions that still remain pendent. So, no, the result should not be the same. It would certainly be another twist of the case. Certainly these cases are arguably slightly more clear. I want to go back to what I asked you before, to be sure I understand the government's position in what our ruling here, if we accept your position, would mean. That is, the Veterans Court essentially exercised discretion in deciding whether or not, in her case, in her particular case at least, the retroactivity would work to her disadvantage. You're asking us to say that there is no discretion, is that right? I think the answer is yes. What we're asking the court to say, just as it did in Durr v. Nicholson, is that the retroactivity issue, given a set of facts, is an issue of law that this court reviews. Well, as I understand, you're not saying that we should say there's no discretion. What we should say is, in the circumstances of this case, there was no impermissible retroactivity. That's true. I just want to make clear that it's treated, as in Durr v. Nicholson, as a matter of law, not so to the use of discretion, to the extent that that's a legal issue. What you're saying is that if something, in fact, as a matter of law, is retroactive, by definition there's no room to say, well, it's retroactive under the law, but we're going to do equity in way past retroactivity in this case. Well, certainly in the circumstances of this case, where the secretary arguably doesn't have, and certainly didn't try to exercise the retroactive rule like in the court, so if the court determined that this rule was indeed retroactive, that's not what the secretary said it was, so that would decide the case right there without resorting to impermissibility. Briefly, if I can, nothing that occurred after, certainly after Ms. Vinson, Mr. Rodriguez, or any DIC applicant filed a claim is relevant, common, or not for purposes of retroactivity, or gives rise to settled expectations or reasonable alliance. And the case that shows that is the 1997 Goodyear case in this court. It's a distinction that hasn't been raised, but there's this distinction between primary and secondary conduct. And Goodyear says quite clearly at 118F3 at 1538 that what conduct means for purposes of retroactivity is the primary conduct out of the world, not the so-called secondary conduct, which in Goodyear's case the court described as the manner in which it must prove that it suffered an injury which is compensable by the agency. That's all litigation at the review of a claim is all secondary conduct, and it's not the type of conduct or reliance that is discussed in retroactivity cases. Thank you. Okay. Thank you, Mr. Chaglitz. Ms. Bartley, the case is taken into submission. All rise. Your Honor, the court has adjourned until this afternoon at 2 p.m.